UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Gordon Simmons and**
**Siegelinde Simmons**

    **v.**                                  Case No. 17-cv-159-PB
                                                  Opinion No. 2018 DNH 048
**Service Credit Union**


**MEMORANDUM AND ORDER**

Gordon Simmons sued his former employer, Service Credit Union (SCU), in state court for breach of contract and a declaratory judgment.[1] SCU removed the case contending that this court has subject matter jurisdiction because Simmons' state law claims are completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Simmons challenges SCU's contention in a motion to remand.

### I. BACKGROUND

Simmons served as SCU's CEO for twenty-one years. Doc. 1-1 at 3. During that time, he had multiple employment contracts, the most recent of which he signed in 2014. Id. at 3-4. The relevant portion of that contract states,

---

[1] Siegelinde Simmons, Gordon's wife when he entered into his employment contract, has an identical claim. Here, I refer only to Gordon's claim because the two claims are identical and Gordon is the primary claimant.

> 3.2 Post-Retirement Medical Coverage – The Credit Union [SCU] agrees to provide the President [Simmons] and his spouse . . . medical, vision and dental insurance throughout the term of his Presidency and thereafter until the death of both, as limited herein. The Credit Union will provide and pay for the medical, vision and dental insurance with the insurance company(s) through which the Credit Union contracts to provide its employee group health plan. Should such medical, vision and dental insurance not be available to the Credit Union for the President and his spouse . . . through the company providing such coverage for Credit Union employees, the Credit Union will contract with another company to provide comparable or equivalent medical, dental and vision insurance, again, paid for by the Credit Union . . . . The Credit Union will not terminate or change this Post Retirement Medical Coverage benefit for any reason other than the termination of the President's employment prior to his voluntary retirement or resignation . . .

Doc. 12-2 at 2.

On January 28, 2016, while the contract was in effect, Simmons submitted a written letter of resignation. Doc. 1-1 at 5. The parties disagree as to the circumstances that led to Simmons' resignation. Simmons claims that he resigned voluntarily, but SCU argues that Simmons was forced out after the company's board of directors learned that he had engaged in a sexual relationship with an employee. Doc. 12-1 at 3, Doc. 1-1 at 5.

SCU informed Simmons in February, 2016 that it would no longer pay for his healthcare coverage. Doc. 1-1 at 5. This prompted Simmons to sue SCU in Rockingham County Superior Court.

Id. at 2, 7. SCU then removed the case to this court. Id. at 1.

## II. ANALYSIS

Simmons argues that I must remand his complaint to state court because this court lacks subject matter jurisdiction over his state law claims. SCU responds by contending that the court has federal question jurisdiction because Simmons' claims are completely preempted by ERISA.[2] As a general rule, ERISA completely preempts state law causes of action that "relate to any employee benefit plan." See Pilot Life v. Dedeaux, 481 U.S. 41, 45 (1987)(quoting 29 U.S.C. § 1144(a)). Because Simmons' claims derive from SCU's agreement to provide him with lifetime post-retirement medical coverage, his claims clearly relate to that agreement. Accordingly, the parties' ERISA preemption dispute turns on whether the agreement is an "employee benefit

---

[2] When determining whether a federal court has subject matter jurisdiction over a removed case, "the general rule [is] that a complaint originally filed in a state court cannot be removed to federal court unless federal jurisdiction appears from the face of a 'well pleaded complaint.'" Fitzgerald v. Codex Corp., 882 F.2d 586, 587 (1st Cir. 1989) (citing Gully v. First Nat'l Bank, 299 U.S. 109 (1936)). In a few select instances, however, "Congress [has] so completely preempt[ed] a particular area [of the law] that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). This doctrine is known as "complete preemption." Id. at 63.

plan" as that term is used in ERISA.

ERISA defines the term "employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). The First Circuit, in turn, has borrowed from the 11th Circuit's en banc opinion in Donovan v. Dillingham, 688 F.2d 1367, 1370-1371 (11th Cir. 1982) in holding that an ERISA employee welfare benefit plan has "five essential constituents":

> (1) a plan, fund, or program (2) established or maintained (3) by an employer or an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment, or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services, or service benefits (5) to participants or their beneficiaries.

Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (quoting Dillingham, 688 F.2d at 1371) (en banc). To determine whether an agreement is a "plan, fund, or program," the court again followed Dillingham and noted that a "'plan, fund or program' under ERISA is established if, from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Wickman, 908 F.2d at 1082 (quoting Dillingham, 688 F.2d at 1373). The court then applied its

4

own gloss to the Dillingham test by stating that "[t]he crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." Wickman, 908 F.2d at 1083.

To determine whether an ERISA plan has been established, the First Circuit has also looked beyond Dillingham to the Supreme Court's decision in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987). There, the Supreme Court stated that ERISA covers benefit plans, but not bare promises to pay benefits. Id. at 7. A plan, the court noted, contains an ongoing administrative scheme. Id. at 9. In Fort Halifax, the court found that the state severance pay statute at issue was not a plan because it did not require employers to establish an administrative scheme to distribute the required benefits. Id. at 12 (the statute only obligated employers to provide covered employees with a one-time lump sum severance payment).

In numerous cases following Fort Halifax, the First Circuit has looked to whether an agreement contained an ongoing administrative scheme to determine whether the agreement was an ERISA plan. See, e.g., Balestracci v. NSTAR Elec. and Gas Corp., 449 F.3d 224, 228-229 (1st Cir. 2006) (retirement dental benefits were an ERISA plan because they required an ongoing

administrative scheme); O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 269 (1st Cir. 2001) (one-time bonus and associated severance benefits was not an ERISA plan because it did not require an ongoing administrative scheme); Rodowicz v. Mass. Mutual Life Ins. Co., 192 F.3d 162, 171-72 (1st Cir. 1999) (one-time bonus offered pursuant to voluntary termination plan not provided pursuant to ERISA plan); Belanger v. Wyman-Gordon Co., 71 F.3d 451, 455-56 (1st Cir. 1995)(one-time early retirement payments not provided pursuant to ERISA plan); Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 853-54 (1st Cir. 1993)(statute requiring employers to pay severance payments was an ERISA plan because it required an ongoing administrative scheme).

When read together, circuit precedent suggests that an employer's agreement to provide benefits to its employees must always have the five essential constituents identified in Dillingham to qualify as an ERISA welfare benefit plan. Moreover, to determine whether an employer has established an ERISA plan (the first two elements of the Dillingham test), this precedent requires the court to undertake a case-specific assessment as to whether: (1) the employer has manifested its intention to provide benefits on a regular and long-term basis; (2) a reasonable person would be able to ascertain the plan's intended benefits, the class of beneficiaries, the source of

financing, and the procedures for recovering benefits, and (3) the benefits are to be provided pursuant to an on-going administrative scheme.

In the present case, the only real issue is whether SCU's agreement to provide Simmons with post-retirement medical coverage established an ERISA plan.[3] On this subject, the available evidence supports SCU's position that the agreement is a plan. First, the agreement plainly requires an employer to provide benefits on a regular and long-term basis because SCU agreed to provide Simmons and his spouse with continuous medical coverage for the rest of their lives. The agreement also sufficiently identifies the benefits provided (medical, dental, and vision coverage comparable to the coverage provided to the company's employees), the beneficiaries of the agreement (Simmons and his spouse), the source of financing (SCU), and the procedures for claiming benefits (all procedures required by the insurer who contracts to provide the coverage). Finally, the agreement contains an ongoing administrative scheme because it requires SCU to have an administrative structure, composed of either its own employees or employees of its chosen insurer, to determine: (1) whether Simmons is eligible to claim his right to

---

[3] The third, fourth, and fifth elements of the <u>Dillingham</u> test are plainly satisfied because SCU is a covered employer, the medical coverage SCU agreed to provide is a covered benefit, and Simmons and his spouse are covered participants.

post-retirement medical coverage; (2) whether the coverage SCU proposes to provide to Simmons is "comparable" to the coverage that the company provides to its employees; and (3) whether any claim for coverage that Simmons submits to his insurer should be paid.

Simmons nevertheless argues that his agreement is not an ERISA employee welfare benefit plan because it covers only him, and no other employees. I am not persuaded by this argument. As the Eleventh Circuit correctly noted in rejecting a similar argument, the text of ERISA does not exclude single employee plans and ERISA's implementing regulations contemplate the possibility that a single employee plan can be within its scope. Williams v. Wright, 927 F.2d 1540, 1545 (11th Cir. 1991); see also Cvelbar v. CBI Inc., 106 F.3d 1368, 1376 (7th Cir. 1997); but see Dakota Minnesota & Eastern Railroad Corp. v. Schieffer, 648 F.3d 935, 938 (8th Cir. 2011) (ERISA does not cover agreement to provide severance benefits to a single employee).

Moreover, in this case, SCU has obligated itself to provide lifetime medical coverage to Simmons and his spouse, regardless of where they may choose to live. Accordingly, a failure to treat SCU's agreement as an ERISA employee benefit plan would leave both SCU and Simmons exposed to the threat of "conflicting and inconsistent state and local regulation," a problem that ERISA was expressly enacted to address. Fort Halifax, 482 U.S.

at 9 (1987)(quoting 120 Cong. Rec. 29197 (1974)).  What matters in this case is not the number of employees covered by the plan, but instead whether an employer's agreement to provide benefits to an employee requires an ongoing administrative scheme to implement.  Because the agreement at issue here satisfies this standard, it is an employee benefit plan as that term is used in ERISA.

## IV. CONCLUSION

For the aforementioned reasons, SCU's agreement to provide Simmons with post-retirement medical coverage constitutes an employee benefit plan regulated by ERISA.  Because Simmons' breach of contract and declaratory judgment claims seek to enforce rights provided under that plan, his claims are completely preempted by ERISA.  Simmons' motion to remand (Doc. No. 9) is denied.  Within 14 days, Simmons shall file an amended complaint restating his claims under ERISA.

SO ORDERED.


/s/Paul Barbadoro_____
Paul Barbadoro
United States District Judge

March 12, 2018

cc:  Debra Weiss Ford, Esq.
     Eileen P. Kavanagh, Esq.
     Paul McEachern, Esq.

9

Bethany P. Minich, Esq.
K. Joshua Scott, Esq.
Martha Van Oot, Esq.